IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ASHLEY TITUS, <br><br> Plaintiff, <br><br> vs. <br><br> STANTON COUNTY, NEBRASKA, and MICHAEL UNGER, Individually and as Stanton County Sheriff; <br><br> Defendants. | 8:12CV261 <br><br> MEMORANDUM AND ORDER |

This matter is before the court on a motion to dismiss and/or strike filed by defendants Stanton County, Nebraska, (the "County") and Michael Unger, individually and as Stanton County Sheriff ("Sheriff Unger"), Filing No. 9. In her amended complaint (Filing No. 8), the plaintiff alleges the defendants violated her civil rights under 42 U.S.C. §1983. She alleges excessive force and deliberate indifference to safety or to serious medical needs in violation of the Eighth Amendment, and also asserts a state law claim for false arrest/false imprisonment against defendant Unger in his individual capacity.

## BACKGROUND

The plaintiff alleges the defendant failed to provide her safe transportation and medical care as a pretrial detainee in an incident involving her ejection from a police vehicle.[1] In the amended complaint, the plaintiff alleges she was walking on a gravel

---

[1] Specifically, the plaintiff's amended complaint lists the following claims: Count I-Unlawful Policy, Custom or Habit; Count II—Negligence; Count III—False Arrest/False Imprisonment (Unger); Count IV—Cruel And Unusual Punishment: Failing to Provide Medical Care (Stanton County and Unger); Count V—Excessive Force (Unger); Count VI—COUNT VI—Negligent Training And Supervision (Stanton County); Count VII—Policy, Custom or Habit (Stanton County And Unger). As discussed below, the court will construe the amended complaint as alleging a constitutional claim for deliberate indifference to safety or to a need for medical care, a constitutional excessive force claim, a state law claim for false arrest/false

road and was approached by defendant Sheriff Unger, who was responding to a complaint of trespassing. He was dressed in plainclothes and was driving a Stanton County vehicle. She alleges Sheriff Unger handcuffed her and placed in the back seat of the vehicle for transport to the Sheriff's Office. During that transport, at alleged speeds of 50 to 60 miles per hour, "the back door the patrol car opened and Plaintiff was ejected from the County vehicle." The plaintiff also alleges she suffered significant injuries. She further alleges she filed a notice of claim under the Nebraska Political Subdivisions Tort Claim Act, Neb. Rev. Stat. § 13-910. She asserts that the locking mechanisms for the rear doors, which would prevent the rear doors from opening, were intentionally disabled on the day of the incident, and alleges the actions were consistent with a "policy or custom" maintained by the Stanton County Sheriff's Office.

In their motion to dismiss, defendants first assert that the facts alleged do not rise to the level of a constitutional violation for either deliberate indifference to serious medical needs or for excessive force and that the plaintiff fails to state a claim for deprivation of rights under 42 U.S.C. § 1983.[2] Next, defendants assert sovereign immunity from suit for false arrest/false imprisonment under exemptions contained in

---

imprisonment and a state law claim for negligence, with allegations that would impose liability on the County for such claims.

[2] In connection with this argument, the defendants urge the court to consider the allegations of the plaintiff's original complaint as admissions. The court declines to do so at this point in the proceedings. The defendants' arguments are directed at exhibits attached to the original pleading. Although under certain circumstances, a statement in a superseded pleading may be introduced into evidence as the admission of a party, "[a] pleading abandoned or superseded through amendment no longer serves any function in the case." *Sunkyong Intern., Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1249 n.3 (8th Cir. 1987). A statement in an abandoned pleading is not conclusive and does not constitute a binding judicial admission. *First Bank of Marietta v. Hogge*, 161 F.3d 506, 510 (8th Cir. 1998). That the statement may be admissible in evidence at some point does not mean the court should consider it at this juncture.

The defendant further asks the court to take judicial notice of the judicial records of the state court pertaining to charges against the plaintiff. The court declines to consider matters outside the pleadings in considering this motion to dismiss.

the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-910. They further argue the court should decline to exercise jurisdiction over plaintiff's claim for negligence under state law and alternatively assert that the negligence claim cannot survive because the pleading shows there was an efficient intervening cause breaking the chain of causation. They also argue that the plaintiff's allegations against the County are not sufficient to show policy or custom or failure to train, so as to impose liability on the County. Defendant Unger also asserts qualified immunity in response to claims against him in his individual capacity.

The defendants also move to strike the plaintiff's claim for punitive damages and her request for a jury trial on certain claims. In response, the plaintiff asserts she does not seek punitive damages.

**LAW**

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555-56. In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id.* Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 679. Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id.*

A court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*

Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly,* 550 U.S. at 558, 556; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679 (stating that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").

Under Fed. R. Civ. P. 12(f), courts may strike "from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts enjoy liberal discretion to strike pleadings under this provision. *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). Striking a party's pleading, however, is an extreme and disfavored measure. *Id.* A motion to strike is neither an authorized nor a proper way to procure the dismissal of all or part of a claim. *See* 5C Wright & Miller, Fed. Prac. & Proc. § 1380 (2008).

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States. *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999). "'[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989)). Thus, a prisoner's Eighth Amendment rights are violated when government entities or officials are deliberately

5

indifferent to a prisoner's medical needs or to his or her safety. See *Estelle v. Gamble,* 429 U.S. 97, 104, (1976); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Deliberate indifference to serious medical needs or to the safety of a prisoner violates the Eighth Amendment prohibition against cruel and unusual punishment, but the claims of a pretrial detainee are properly analyzed under the Due Process Clause of the Fourteenth Amendment. *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902 (8th Cir. 1999). The Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to "at least as great" a level of protection as that afforded convicted prisoners under the Eighth Amendment. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). In the Eighth Circuit, the Fourteenth Amendment due process analysis applicable to a pretrial detainee's claims parallels the Eighth Amendment analysis because pretrial detainees are entitled to the same protection as imprisoned convicts. *Carpenter v. Gage*, 686 F.3d 644, 650 (Neb. 2012).

Allegations that officials intentionally place prisoners in dangerous situations or manifest deliberate indifference for their safety are sufficient to state a claim for deliberate indifference for prisoner's safety. See *Brown v. Missouri Dept. of Corrections*, 353 F.3d 1038 (8th Cir. 2004); *Brown v. Morgan*, No. 94-2023, 1994 WL 610993, at *1 (8th Cir. Nov. 7, 1994) (unpublished per curiam opinion) (sheriff's refusal to let prisoner wear seatbelt, driving at high rate of speed in bad weather, and smiling when he saw that prisoner was frightened was sufficient to support conclusion that sheriff manifested deliberate indifference for prisoner's safety). To establish a claim based on deliberate indifference to a serious medical need or safety, a plaintiff must demonstrate that she suffered an objectively serious medical need or need for

protection, and that law enforcement officials had actual knowledge of those needs but deliberately disregarded them.  *See, e.g., Carpenter,* 686 F.3d at 650 (involving medical need).  A showing of negligence is not sufficient to meet this burden*. Id.*

Claims that law enforcement officers have used excessive force during an arrest or other seizure are analyzed under the Fourth Amendment and its "objective reasonableness" standard.  *Molina-Gomes v. Welinski*, 676 F.3d 1149, 1152 (8th Cir. 2012).  To decide whether a particular use of force is objectively reasonable, courts examine the facts and circumstances of each case, including the crime's severity, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect actively resists arrest or flees.  *Shekleton v. Eichenberger*, 677 F.3d 361 (8th Cir. 2012).  Whether an action is "reasonable" in the Fourth Amendment sense can only be analyzed by weighing and balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Bernini v. City of St. Paul*, 665 F.3d 997, 1006 (8th Cir. 2012) (quoting *Graham*, 490 U.S. at 396).

Qualified immunity is both "a defense to liability and a limited entitlement not to stand trial or to face the other burdens of litigation.'"  *Iqbal*, 556 U.S. at 672 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Officials being sued under § 1983 are entitled to qualified immunity for actions that did not violate a clearly established constitutional right at the time of the alleged violation such that reasonable officials acting in the officials' position would not have understood they were violating that right.  *Harrington v. City of Council Bluffs, Iowa,* 678 F.3d 676, 680 (8th Cir. 2012).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken

7

judgments about open legal questions." *Ashcroft v. al-Kidd*, —U.S. —, —, 131 S. Ct. 2074, 2085 (2011) (noting that, when properly applied, it protects all but the plainly incompetent or those who knowingly violate the law). In determining whether a government official is entitled to qualified immunity, the court asks (1) whether the facts alleged establish a violation of a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The defense of qualified immunity is not available to an official acting outside the clearly established scope of his discretionary authority. *Johnson v. Phillips*, 664 F.3d 232, 237 (8th Cir. 2011). Whether a given set of facts entitles an official to summary judgment on qualified immunity grounds is a question of law, but if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment. *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir. 2003).

  Government entities are not liable under § 1983 for an employee's actions under a theory of respondeat superior, but the county may be held liable under § 1983 for a rights violation when it either had an unlawful policy or practice that caused the rights violation, or a "policymaker" directly caused the rights violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Yellow Horse v. Pennington County*, 225 F.3d 923, 928 (8th Cir. 2000). Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04

(1997). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404.

Under § 1983, to establish liability against a defendant in his individual capacity, because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).

Under Nebraska law, the state and certain governmental units are immune from suit unless the state consents to suit. *McKenna v. Julian*, 763 N.W.2d 384, 389 (Neb. 2009). Tort actions against political subdivisions of the State of Nebraska are governed exclusively by the Political Subdivisions Tort Claims Act ("PSTCA"). Neb. Rev. Stat. § 13–901 *et seq.; McKenna,* 763 N.W.2d at 389. A political subdivision includes a county. Neb. Rev. Stat. § 13-903. The Legislature, through the PSTCA, has removed, in part, the traditional immunity of subdivisions for the negligent acts of their employees. *Id.; see* Neb. Rev. Stat. §§ 13-902; 13-903(4) (waiving sovereign immunity for negligence claims against officers in their official capacities). Tort actions against political subdivisions of the State of Nebraska are governed exclusively by the PSTCA. *McKenna*, 763 N.W.2d at 389, 391 (stating that "[w]here a claim against an employee of a political subdivision is based upon acts or omissions occurring within the scope of employment, it is governed by the provisions of the PSTCA") The PSTCA does not apply to actions against political subdivisions or their employees based on claims of false arrest or false imprisonment. Neb. Rev. Stat. § 13–910(7). These are among the

9

exceptions to the PSTCA's waiver of sovereign immunity. *McKenna*, 763 N.W.2d at 389, 391 (noting that a claimant has an available remedy for such conduct under 42 U.S.C. § 1983 in a claim for unconstitutional seizure).

## DISCUSSION

On review of the complaint, the court finds the complaint has not alleged facts sufficient to survive a motion to dismiss on several claims. The plaintiff has alleged that the defendants knew and disregarded a known risk to the plaintiff's safety during the transport. The plaintiff's allegations with respect to Sheriff Unger's conduct, taken as true, are sufficient to state a claim for deliberate indifference to her safety. Essentially she alleges she was placed in a dangerous situation with deliberate indifference to her safety while in custody. She also alleges that Sheriff Unger's actions were taken pursuant to an official policy or custom of the County and asserts a claim for negligent training and supervision against Stanton County. Those allegations are sufficient to state a claim against the County at this stage of the litigation. Though the amended complaint is not a model of clarity, the court finds in the amended complaint enough "factual matter (taken as true) to suggest" that "discovery will reveal evidence" to support the elements of the plaintiff's § 1983 claim for deliberate indifference to her safety while in custody.

The plaintiff's allegations are insufficient, however, with respect to her other constitutional claims. The only factual allegations in connection with use of force are that Sheriff Unger handcuffed the plaintiff and placed her in the car. Those allegations do not state a claim for use of excessive force. Further, there are no allegations that the defendants failed to provide or obtain prompt medical care for the plaintiff after she was

ejected from the vehicle. Accordingly, the court finds that those claims should be dismissed.

The court also finds the defendants have demonstrated that they are entitled to dismissal of the plaintiff's state law claim for false arrest/false imprisonment. No claim for false arrest or false imprisonment may be maintained against Sheriff Unger or the County because those claims are excepted from the waiver of sovereign immunity under the PSTCA. The plaintiff has not alleged that Sheriff Unger acted outside the scope of his employment, and the factual allegations of the complaint indicate that he was acting within the scope of his duties as a sheriff in detaining and arresting the plaintiff. Accordingly, the court finds the plaintiff has failed to state a claim under Nebraska law for false arrest/false imprisonment. She has stated a state law claim for negligence, for which the state has waived sovereign immunity, and she alleges she has complied with the provision of the Nebraska Political Subdivisions Torts Claims Act. The qualified immunity inquiry requires more factual development. At this stage of the litigation, the court is unable to determine whether there are genuine disputes concerning the predicate facts material to the qualified immunity issue. Accordingly, the court finds the motion to dismiss on the ground of qualified immunity should be denied at this time without prejudice to reassertion in a motion for summary judgment.

Defendants' motion to strike the punitive damages claim has been rendered moot by the plaintiff's concession that she does not seek punitive damages. The court finds the defendants' motion to strike the plaintiff's demand for a jury trial on certain issues should be denied. A motion to strike is not the proper vehicle to accomplish that end. Issues that that should not be submitted to a jury can be tried to the court. Accordingly,

11

IT IS ORDERED:

1. Defendants' motion to dismiss (Filing No. 9) is granted in part and denied in part.

2. Defendants' motion to dismiss is granted with respect to the plaintiff's claim for false arrest/false imprisonment (Count III).

3. Defendants' motion to dismiss is granted with respect to the plaintiff's claim for excessive force (Count V).

4. Defendant's motion to dismiss is granted with respect to that portion of Count IV of the plaintiff's amended complaint that alleges deliberate indifference in failing to provide necessary medical care.

5. Defendant's motion to dismiss is denied with respect to that portion of Count IV of the plaintiff's amended complaint that alleges deliberate indifference to the plaintiff's safety while in custody.

6. Defendant's motion to dismiss is denied in all other respects.

7. Defendants' motion to strike is denied.

Dated this 22nd day of April, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge